2014 COA 7

**Joyce RENO, in her official capacity as Chaffee County Clerk and Recorder, Petitioner–Appellee,**

v.

**Marilyn MARKS, Respondent–Appellant.**

**Court of Appeals No. 12CA2613**

Colorado Court of Appeals, Div. IV.

Announced January 16, 2014

Rehearing Denied March 6, 2014

Chaffee County District Court No. 11CV132, Honorable Charles M. Barton, Judge

Jennifer Davis, County Attorney, Salida, Colorado, for Petitioner–Appellee

McGuire Baines LLC, Robert A. McGuire, Jeffrey D. Baines, Denver, Colorado, for Respondent–Appellant

Opinion by JUDGE WEBB

¶ 1 Under the Colorado Open Records Act (CORA), section 24–72–201 *et seq.*, C.R.S. 2013, does a trial court have discretion to deny a person who requests inspection of a public record attorney fees, where the custodian commenced a section 24–72–204(6)(a) action against the requestor seeking an order restricting inspection, turned over one of the records that the requestor had sought to inspect, and did not obtain such an order? This is a question of first impression, which we answer "no." Therefore, we reverse the order denying respondent-appellant Marilyn Marks' motion for attorney fees, and remand the case for entry of an attorney fees award against petitioner-appellee, Joyce Reno, in an amount to be determined by the trial court.

## I. Background

¶ 2 According to the parties' briefs, the following facts are undisputed. During the 2011 general election, Marks emailed Reno, the Chaffee County Clerk and Recorder, requesting to "review some voted ballots from

the 2010 general election." The next day, Marks sent a second email notifying Reno that if Marks' request was not granted within the three-day statutory deadline, Marks would file an action in the district court to compel production of the documents.

¶ 3 On Reno's behalf, the county attorney notified Marks that as framed, Marks' request could not be granted because it was unduly broad. The county attorney also advised that the Chaffee County Public Records General Policy allows Reno to delay processing voluminous requests made within twenty days of an upcoming election.

¶ 4 Without revoking her initial request, Marks emailed a second request to Reno, seeking to "inspect and copy the first anonymous/untraceable ballot in the mail-in ballot group ... in the first box of mail ballots stored in the November 2010 .election." Again, the county attorney responded, this time explaining to Marks that her request would require the presence and involvement of three staff members and two election judges, and that an observer from each political party must be given the opportunity to participate. The county attorney concluded that "such a process is unduly burdensome to [Reno's] office during election time." The county attorney further notified Marks that, given the "timing of the request and the uncertainty of whether the disclosure of the requested records is permitted," Reno had filed a petition in district court seeking judicial guidance on Marks' request. Finally, the county attorney emphasized that "the County [was] not denying [Marks] the right to inspect the requested record. Rather, [Reno] [was] unable to determine if disclosure is prohibited."

¶ 5 Reno filed a CORA action in district court, requesting that the court prevent the disclosure of voted ballots because she "believe[d], in good faith, that Colorado law prohibits" the disclosure of voted ballots, and that such disclosure would substantially injure the public interest by chilling a citizen's right to vote. The petition addressed both Marks' first broad CORA request and her second CORA request seeking to view a single ballot. Although the petition named Marks as the respondent, she did not file an answer.

¶ 6 Before the hearing on Reno's petition, the parties stipulated to stay the proceedings pending the outcome of proposed legislation, House Bill 12–1036, which pertained to the disclosure of voted ballots. According to the stipulated motion, "if passed, [the proposed legislation] would provide guidance with respect to the issues involved in this matter and Marks' request. [I]t would be premature to address the issue if there is a possibility that it would be resolved through legislative action."

¶ 7 After House Bill 12–1036 passed, Reno agreed to produce a single anonymous voted ballot according to guidelines contained in the statute. *See* § 24–72–205.5, C.R.S.2013. The parties then told the court that only Marks' request for attorney fees remained at issue.

¶ 8 Following an evidentiary hearing, the district court declined to award Marks any attorney fees. As relevant here, it concluded that Marks was not entitled to fees under section 24–72–204(5), C.R.S.2013, because she was not a "prevailing applicant." Marks appeals this ruling.

## II. Standard of Review

¶ 9 As with any statute, a lower court interpretation of CORA is subject to de novo review. *Colo. Republican Party v. Benefield,* 337 P.3d 1199, 1204 (Colo.App. 2011) (*cert. granted* 2012 WL 4478961, Sept. 24, 2012). Here, that review is informed by the following principles:

- The goal of statutory interpretation is to ascertain the General Assembly's intent. *People v. Nance,* 221 P.3d 428, 430 (Colo.App.2009).
- If legislative intent is clear from the plain language of the statute, other rules of statutory interpretation need not be applied. *Id.*
- The words of statutes are to be given their plain and ordinary meaning. *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.,* 3 P.3d 30, 35 (Colo.2000).
- The statutory provisions should be construed as a whole, giving effect to every

word and term, whenever possible. *Cacioppo v. Eagle Cnty. Sch. Dist. Re–50J,* 92 P.3d 453, 463 (Colo.2004).

- A court cannot add words to a statute. *Ferguson Enters., Inc. v. Keybuild Solutions, Inc.,* 275 P.3d 741, 748 (Colo.App. 2011).

- CORA should be construed "in favor of public access to public records." *City of Fort·Morgan v. E. Colo. Pub. Co.,* 240 P.3d 481, 486 (Colo.App.2010); *see Telegram Pub. Co., Inc. v. Kansas Dep't of Transp.,* 275 Kan. 779, 69 P.3d 578, 586 (2003) (whether government lacked reasonable basis for denying access to records—and therefore was liable for attorney fees—was viewed in light of the purpose of the Kansas Open Records Act, which required liberal construction in favor of openness).

### III. CORA's Fee–Shifting Provision

¶ 10 CORA provides two avenues for judicial resolution of a dispute over inspection of a public record: an action by the applicant to compel inspection under section 24–72–204(5) and an action by the custodian to obtain judicial guidance or to shield the record from inspection under section 24–72–204(6)(a).[1] Here, both sections must be examined, because the fee-shifting provision appears in the first, but before Marks could invoke that procedure based on the County Attorney's refusal to produce the records, Reno filed her petition under the second.

¶ 11 Under section 24–72–204(5), if a custodian denies a request to inspect a public record, the applicant "may apply to the district court ... for an order directing the custodian of such record to show cause why the custodian should not permit the inspection of such record." And subject to an exception not relevant here, "[u]nless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant." *Id.* This section does not provide any other criteria for the court to determine whether a requestor was the "prevailing applicant." However, if "the court finds that the denial of the right of inspection was proper," and also "finds that the action was frivolous, vexatious, or groundless," it "shall award court costs and reasonable attorney fees to the custodian." *Id.*

¶ 12 Under section 24–72–204(6)(a), if the custodian believes either that disclosure of the requested record "would do substantial injury to the public interest," or that the custodian "is unable, in good faith, after exercising reasonable diligence, and after reasonable inquiry," to determine if disclosure is prohibited, "the official custodian may apply to the district court ... for an order permitting him or her to restrict such disclosure or for the court to determine if disclosure ... is prohibited." This subsection provides the custodian with a limited safe harbor from an attorney fees award:

> The attorney fees provision of subsection (5) of this section shall not apply in cases brought pursuant to this paragraph (a) by an official custodian who is unable to determine if disclosure of a public record is prohibited, [but only if the custodian] proves and the court finds that the custodian, in good faith, after exercising reasonable diligence, and after making reasonable inquiry, was unable to determine if disclosure of the public record was prohibited without a ruling by the court.

*Id.*

¶ 13 Here, our analysis of the interplay between these two sections is narrowed because Reno's petition did not seek judicial guidance on the basis that she was unable to determine if disclosure was prohibited. As the trial court observed, "[w]hile [Reno] also stated that she was uncertain whether she could disclose a voted ballot to Ms. Marks, which could have been a basis for a claim in the petition ... she did not file such a claim and it does not serve as a basis for determining the attorney fee issue." Had she petitioned on this basis, the attorney fees issue

---

1. At oral argument, the parties informed the court that the legislative history had been examined, and it was uninformative for purposes of this case.

might well have been resolved differently.[2]

## IV. Application

■ ¶ 14 Marks contends that because she was the prevailing applicant under section 24–72–204(5), the court erred in denying her request for attorney fees. We conclude that the court lacked discretion to determine that Marks was not the prevailing applicant. And because Reno commenced the action but failed to obtain a court order shielding any of the requested records from inspection, we further conclude that the court erred in denying Marks attorney fees.

### A. The Fee Shifting Provision in Section 24–72–204(5) Applies to a Custodian's Action under Section 24–72–204(6)(a)

■ ¶ 15 Section 24–72–204(6)(a) does not expressly provide for an attorney fees award to an applicant. However, it creates a safe harbor for "an official custodian who is unable to determine if disclosure of a public record is prohibited," to whom "[t]he attorney fees provision of subsection (5) of this section shall not apply." We cannot ignore this provision. It compels the conclusion that the attorney fees provision in section 24–72–204(5) also applies to the only other form of custodian action permitted by section 24–72–204(6)(a)—where, as here, the custodian seeks an order "permitting him or her to restrict such disclosure." See City & Cnty. of Denver v. Qwest Corp., 18 P.3d 748, 757 (Colo.2001) ("The statute impliedly acknowledges the authority of subdivisions to require construction permits by expressly exempting construction permit fees from its general prohibition....").

¶ 16 Applying the "unless" clause in section 24–72–204(5) to such an action means that the court "shall award court costs and reasonable attorney fees to the prevailing applicant," unless the custodian obtains an order restricting inspection. Thus, the requestor who must defend a section 24–72–204(6)(a) action brought by a custodian is a "prevailing applicant" if the custodian fails to obtain an order restricting inspection, just as

a requestor who must bring a section 24–72–204(5) action is a "prevailing applicant," if the court does not uphold denial of the right to inspect a public record.

### B. The Trial Court Does Not have Discretion to Determine Whether a Requestor is a "Prevailing Applicant"

■ ¶ 17 According to the division in Benefield, 1199 P.3d at 1205:

CORA's costs and attorney fees provision does not afford the trial court discretion. The award of costs and attorney fees is mandatory "[u]nless the court finds that the denial of the right of inspection was proper" (or unless a statutory provision precludes the award of such fees, see § 24–72–204(5) (providing exception as to costs and fees sought for production of discovery documents in pending litigation); § 24–72–204(6)(a) (providing exception as to attorney fees sought under certain circumstances)).

This conclusion conforms to the plain language and structure of section 24–72–204(5): "[u]nless the court finds that the denial of the right of inspection was proper, it ... shall award court costs and reasonable attorney fees to the prevailing applicant." (Emphasis added.) See Webster's Third New International Dictionary 2503 (2002) ("unless" defined as "under any other circumstance than that"; "except on the condition that"; "without the accompanying circumstance or condition that"); Miklosy v. Regents of Univ. of Cal., 44 Cal.4th 876, 80 Cal.Rptr.3d 690, 188 P.3d 629, 636 (2008) ("[A]s a matter of established usage, the 'unless' clause states conditions that must be satisfied.").

¶ 18 The statute provides only this one criterion on which to deny an applicant attorney fees. Had the General Assembly intended to vest trial courts with discretion over fees, it could have used language such as, "[u]nless the court finds that the denial of the right of inspection was proper, it ... shall determine whether the applicant is the prevailing party, and if so award court costs and reasonable attorney fees to the prevailing

---

2. Reno could also have avoided liability for Marks' attorney fees by entering into a settlement, whereby Reno produced some records and Marks waived her claim for attorney fees. Instead, she produced a ballot and agreed that Marks' attorney fees remained to be resolved.

applicant." But we cannot add such language to the statute.

¶ 19 Cases vesting trial courts with considerable discretion to determine which party prevailed where the court found that both parties prevailed on some issues, do not require a different interpretation. *See, e.g., Husband v. Colo. Mountain Cellars, Inc.,* 867 P.2d 57, 62 (Colo.App.1993). Here, in contrast, the trial court never reached the merits. The "unless" clause also distinguishes cases recognizing broad trial court discretion to apply a contractual prevailing party clause, which is untethered by similar limiting language. *See, e.g., Anderson v. Pursell,* 244 P.3d 1188, 1194 (Colo.2010).

¶ 20 Instead, the statute is more like C.R.C.P. 54(d), which includes limiting language, "[e]xcept when express provision therefor is made." But unlike section 24–72–204(5), Rule 54(d) expressly provides for the exercise of discretion, "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." And where the "except" phrase applies, courts do not exercise the discretion created by the second phrase. *Rossmiller v. Romero,* 625 P.2d 1029, 1030 (Colo.1981) ("Thus, unless there is a statute or rule specifically prohibiting the award of costs, trial courts may exercise their discretion to award costs to a prevailing party.").

¶ 21 Looking at the statute as a whole, this interpretation is consistent with the final sentence in this section, which mandates an attorney fees award to the custodian if the trial court finds the applicant's action to have been "frivolous, vexatious, or groundless." Again, only one criterion exists to award the custodian attorney fees. And if that criterion is met, fees must be awarded.

¶ 22 It is also consistent with the legislative declaration favoring inspection of public records. § 24–72–201, C.R.S.2013 ("[A]ll public records shall be open for inspection by any person at reasonable times, except as provided in this part 2 or as otherwise specifically provided by law."). At the attorney fees hearing, Reno presented considerable evidence of her good faith in having commenced this action. Nevertheless, the interpretation that she urges could lead to re-

questors in other cases being denied attorney fees. Hence, we reject that interpretation because it could dissuade requestors from opposing actions in which custodians seek to shield public records from inspection.

### C. Marks Is Also Entitled to Appellate Attorney Fees

■ ¶ 23 Based on our conclusion that the Reno is liable for Marks' attorney fees, we further conclude that Marks is entitled to reasonable appellate attorney fees under CORA. *Marks v. Koch,* 284 P.3d 118, 124 (Colo.App.2011) ("On remand, and upon Marks' application, the district court shall determine the reasonableness of Marks' appellate attorney fees.").

### V. Conclusion

¶ 24 The order denying Marks' request for attorney fees is reversed and the case is remanded to the trial court for an award of Marks' reasonable attorney fees, including her fees in this appeal. *See Benefield,* 337 P.3d at 1209 ("The appropriateness of costs and the reasonableness of attorney fees are matters that require factual findings and therefore must be decided in the first instance by the trial court."). However, in determining the amount of reasonable fees, the court may consider the degree of Marks' success. *Id.* at 1207–08.

JUDGE BERNARD concurs.

JUDGE DUNN dissents.

JUDGE DUNN dissenting.

¶ 25 The majority concludes that a district court has no discretion to determine who the prevailing applicant is under the fee-shifting provision in the Colorado Open Records Act (CORA), section 24–72–201 *et. seq.,* C.R.S. 2013. Because I disagree with this conclusion, I respectfully dissent.

¶ 26 Parties ordinarily must bear the expense of their own attorney fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Under this so-called "American Rule," attorney fees are not awarded to a prevailing party absent explicit statutory au-

thority. *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1114 (Colo.1996). To further advance the American Rule, statutes permitting fee awards are "narrowly construed." *Crandall v. City & Cnty. of Denver*, 238 P.3d 659, 662 (Colo.2010).

¶ 27 CORA contains an explicit fee-shifting provision. In particular, CORA provides that if a request to inspect documents is denied, the requesting party "may apply to the district court ... for an order directing the custodian of such record to show cause why the custodian should not permit the inspection of such record." § 24–72–204(5), C.R.S.2013. And "[u]nless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant." *Id.*

¶ 28 I have no quarrel with the majority's conclusion that fees are mandatory under CORA's fee-shifting statute. § 24–72–204(5); *see also Colo. Republican Party v. Benefield*, 337 P.3d 1199, 1204 (Colo.App.2011) (cert. granted 2012 WL 4478961, Sept. 24, 2012) (an award of attorney fees is mandatory under CORA if the custodian's denial was not proper and if the party requesting disclosure prevailed). Indeed, the plain language of the statute compels such a conclusion once the prerequisites to a fee award are satisfied. *See* § 24–72–204(5). I part company with the majority, however, on whether a district court first has discretion to determine whether the applicant is "prevailing" before awarding the mandatory fees. In my view, a district court does have such discretion. *See, e.g., Anderson v. Pursell*, 244 P.3d 1188, 1194 (Colo.2010) (determination of whether a party is "prevailing," for the purposes of a fee-shifting provision is a discretionary decision for the district court); *accord Bedard v. Martin,*100 P.3d 584 (Colo.App.2004).

¶ 29 First, the plain language of CORA's fee-shifting statute reflects the legislature's intent that an applicant must prevail to be entitled to a mandatory fee award. Yet, the majority construes sections 24–72–204(5) and 24–72–206(a), C.R.S.2013, as creating a binary choice: either the court finds for the custodian or it necessarily awards attorney fees if the applicant ultimately obtains a single document, no matter the context or how the document was obtained. In my view, this interpretation renders the term "prevailing" superfluous and without meaning. *See Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo.2005) (when examining a statute's language, we must give effect to every word; we do not presume that the legislature used language idly and with no intent that meaning should be given to the language).

¶ 30 If the legislature intended to award fees to any applicant who ultimately obtains a document under CORA, it would have plainly said so. *Ruiz v. Hope for Children, Inc.*, 2013 COA 91, ¶ 14, 352 P.3d 983 (had the legislature intended to include a certain provision, limitation, or requirement, it would have expressly done so). For example, it could simply have eliminated the term prevailing from CORA's fee-shifting provision. Or it could have expanded the definition of "prevailing" to include an applicant who ultimately obtains a document even in the absence of a court order requiring such disclosure. I am not inclined to expand the definition of "prevailing" where the legislature did not, particularly in light of the fact that fee-shifting statutes should be narrowly construed. *See, e.g., Crandall*, 238 P.3d at 662.

¶ 31 It is of course within the legislative province to divest courts of discretion to determine who prevailed for purposes of fee awards. And at least one legislature has opted not to include the term prevailing in its open records fee-shifting statute. *See Althouse v. Palm Beach Cnty. Sheriff's Office*, 92 So.3d 899, 902 (Fla.Dist.Ct.App.2012) (Florida's open records statute "makes no mention that the Petitioner must be the prevailing party to be awarded costs ...."). The Colorado legislature, however, expressly retained the requirement that an applicant must prevail before it is entitled to a fee award.

¶ 32 Second, CORA's fee-shifting provision

was added in 2001.[1] At that time, settled authority existed that vested district courts with considerable discretion to determine whether a party is prevailing for purposes of a fee-shifting statute or contractual provision. *Dennis I. Spencer Contractor, Inc. v. City of Aurora,* 884 P.2d 326, 328, 336 n.6 (Colo. 1994) (determination of which party prevailed for purposes of a contractual fee-shifting provision is within the discretion of the trial court); *Husband v. Colo. Mountain Cellars, Inc.,* 867 P.2d 57, 61–62 (Colo.App.1993) (trial court has discretion to determine a prevailing party under fee-shifting provision).

¶ 33 Because the legislature is presumed to be aware of judicial interpretations in areas in which it legislates, we assume the legislature adopts the construction which has been judicially placed "on particular language when such language is employed in subsequent legislation." *Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997). The fact that the legislature did not modify this precedent and deprive courts of discretion to determine if an applicant prevailed when it enacted CORA's fee-shifting provision, persuades me that it did not intend to do so.[2]

¶ 34 I therefore do not agree with the majority's assessment that, had the legislature intended district courts to have the discretion to determine whether a party prevailed, it would have said so directly.

¶ 35 Rather, if the legislature intended to reject established precedent and to strip district courts of discretion to determine who prevailed for purposes of awarding fees, the statute would simply read: "Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award costs and reasonable attorney fees to the applicant."

¶ 36 Here, the district court properly considered the litigation in its entirety and concluded that Marks was not a prevailing applicant for several reasons. First, Marks obtained a single unvoted ballot in response to her second CORA request. She never obtained any documents in response to her original broad CORA request. *See Archer v. Farmer Bros. Co.,* 90 P.3d 228, 231 (Colo. 2004) (in cases involving more than one claim, some of which are successful and some of which are not, a district court may decline to find a prevailing party). Second, because Marks' request came within twenty days of an election, the district court concluded that Reno correctly informed Marks that her request could not be granted at that time.[3] Third, the court found that Marks received a single ballot at least in part as a result of the passage of House Bill 12–1036, not due to the litigation.[4] *See Diffenderfer v. Gomez–Colon,* 587 F.3d 445, 453–54 (1st Cir.2009) (a party is not a prevailing party when the lawsuit is resolved by legislation that renders the case moot before a judgment is entered on the party's behalf); *Halloran v. State, Div. of Elections,* 115 P.3d 547, 552 (Alaska 2005) (where legislative action renders a case moot, a court should not find that a party prevailed for the purposes of a fee-shifting provision absent the very clearest expression of legislative intent). And finally, Marks never obtained a favorable court order or judgment; rather, the Clerk voluntarily disclosed the ballot. Yet the plain language of CORA's fee-shifting statute uses "prevailing" in a context

---

1. Ch. 286, sec. 3, § 24–72–204, 2001 Colo. Sess. Laws 1074.

2. To the extent the majority rightfully expresses concern about potentially abusive conduct by custodians, I note that statutes and rules are in place to address such conduct. *See* § 13–72–102, C.R.S.2013; C.R.C.P. 11; *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health,* 532 U.S. 598, 610, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (where the meaning of "prevailing party" as used in a fee-shifting statute is clear, it is not necessary to determine in which way policy arguments cut).

3. *See* § 24–72–203, C.R.S.2013 (permitting custodians to make special rules regarding the inspection of records as are necessary for the protection of records and to prevent interference with the regular duties of the custodian); *see also* Public Records General Policy of Chaffee County, Colorado (permitting the Clerk to delay processing an unduly broad CORA request made within twenty days of an upcoming election).

4. At the fee hearing, the Clerk testified that she disclosed the ballot after the passage of House Bill 12–1036, which set forth guidance for county clerks regarding what ballots could be disclosed and procedures for the disclosure of such ballots.

that confirms that the existence of judicial relief or action is required. § 24–72–204(5) (unless the court "finds" a denial was proper, it shall "order" an inspection and "shall award" costs and fees). Because the district court neither made any findings nor entered any orders, Marks could not be a prevailing applicant. *See Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (requiring either a judgment on the merits or a court-ordered consent decree to prevail for purposes of a fee-shifting statute); *Benefield,* 337 P.3d at 1206 ("a prevailing applicant is one who obtains an order directing 'the custodian to permit ... inspection' of a given public record"; where the court orders inspection, the applicant has prevailed).

¶ 37 In sum, I believe CORA requires a district court to find that an applicant is "prevailing" before awarding attorney fees. And I further believe that district courts have discretion to make such a determination based upon the course of the litigation, the relief sought, and the ultimate outcome. Because I do not believe the district court abused its discretion in concluding that Marks was not the prevailing applicant for purpose of CORA's fee-shifting provision, I would affirm the district court's denial of Marks' request for attorney fees.

¶ 38 I therefore respectfully dissent.