**Pastor Michael DANIELSON, Colorado Criminal Justice Reform Coalition, and Colorado–Cure, Plaintiffs–Appellants**

v.

**Gigi DENNIS, in her official capacity as Secretary of State for the State of Colorado, Defendant–Appellee.**

No. 06SA174.

Supreme Court of Colorado, En Banc.

July 31, 2006.

Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C., Norman R. Mueller, Ty Gee, American Civil Liberties Union Foundation of Colorado, Mark Silverstein, Denver, Colorado, Attorneys for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Maurice G. Knaizer, First Assistant Attorney General, Denver, Colorado, Attorneys for Defendant–Appellee.

John W. Suthers, Attorney General, Paul Sanzo, First Assistant Attorney General, Civil Litigation and Employment Law Section, Denver, Colorado, Attorneys for Amicus Curiae Governor Bill Owens, the Colorado State Board of Parole, and the Colorado Department of Corrections.

Justice HOBBS delivered the Opinion of the Court.

Pursuant to section 1–1–113(3), C.R.S. (2005), we accepted jurisdiction in this appeal to determine whether section 1–2–103(4), C.R.S. (2005), unconstitutionally conflicts with article VII, section 10 of the Colorado Constitution. Section 1–2–103(4) prohibits Colorado parolees from registering to vote

and voting. Article VII, section 10 provides that persons who were qualified electors prior to their imprisonment and who have served their full term of imprisonment, shall have their rights of citizenship restored to them.[1]

In dismissing the petition and complaint in this case, the District Court for the City and County of Denver ruled in favor of the Colorado Secretary of State that the statute is not unconstitutional because it does not conflict with the constitutional provision. We agree.

We hold that the General Assembly did not violate article VII, section 10 of the Colorado Constitution by enacting a law that prevents a person who has been convicted of a felony and is serving a sentence of parole from voting or registering to vote. A person who is serving a sentence of parole has not served his or her full term of imprisonment within the meaning of this constitutional provision. Appellants have not borne their burden of clearly demonstrating that section 1–2–103(4), C.R.S. (2005), is unconstitutional.

Accordingly, we affirm the judgment of the district court.

## I.

In the trial court, Pastor Michael Danielson ("Danielson"), the Colorado Criminal Justice Reform Coalition ("CCJRC"), and Colorado–CURE challenged the constitutionality of section 1–2–103(4), C.R.S. (2005), by means of a petition under section 1–1–113, C.R.S. (2005), of the Colorado Uniform Election Code and a complaint for declaratory judgment under section 13–51–101 to –115, C.R.S. (2005).

The trial court found the following facts to be undisputed. Danielson was sentenced to the Colorado Department of Corrections for a felony conviction and is now on parole. Except for his status as a parolee, he is an eligible elector of the State of Colorado who wants to register to vote and cast his ballot in local, state, and national elections. The Colorado Secretary of State, however, will not allow him to do this because section 1–2–103(4) provides that "[n]o person . . . serving a sentence of parole shall be eligible to register to vote or to vote in any election."

CCJRC and Colorado–CURE are not-for-profit Colorado corporations whose members include persons who are on parole and would be eligible to vote were it not for the statute and the Secretary of State's enforcement of it.

The Appellants (collectively "Danielson") sought a declaration of the statute's unconstitutionality and an injunction against its enforcement.[2] Secretary of State Dennis filed a motion to dismiss under C.R.C.P. 12(b)(5). In granting this motion and dismissing the case, the trial court ruled that section 1–2–103(4) does not conflict with article VII, section 10 of the Colorado Constitution. On appeal, we accepted jurisdiction under section 1–1–113(3) to review the trial court's judgment.

We affirm the judgment.

## II.

We hold that the General Assembly did not violate article VII, section 10 of the Colorado Constitution by enacting a law that prevents a person who has been convicted of a felony and is serving a sentence of parole from voting or registering to vote. A person who is serving a sentence of parole has not served his or her full term of imprisonment within the meaning of this constitutional provision. Appellants have not borne their burden of clearly demonstrating that section 1–2–103(4), C.R.S. (2005), is unconstitutional.

### A.

### Standard of Review

■ Article VI, section 1 of the Colorado Constitution charges the judicial branch with

---

1. The issue phrased by appellants is "[w]hether section 1–2–103(4) violates Article VII, Section 10, of the Colorado Constitution by disfranchising eligible electors who have been released from confinement in a public prison and placed on parole."

2. The petition and complaint in the district court also alleged a cause of action under 42 U.S.C. section 1983. These arguments are not before us and we do not address them.

construing the meaning of the constitution; our review is de novo. *Garhart v. Columbia/Healthone, L.L.C.,* 95 P.3d 571, 581 (Colo. 2004); *E–470 Pub. Highway Auth. v. Revenig,* 91 P.3d 1038, 1041 (Colo.2004).

■ We approach the potential invalidation of legislative acts cautiously. *See People ex rel. Tucker v. Rucker,* 5 Colo. 455, 458 (1880). We presume that a statute is constitutional. *Garhart,* 95 P.3d at 581. In order to overcome this presumption, the person alleging a conflict between the legislative act and a constitutional provision must establish that "[t]he precise point of conflict between the statute and the constitution—state or national—... appear[s] plain, palpable, and inevitable, or else the act of the general assembly must be held to prevail." *Union Pac. Ry. Co. v. De Busk,* 12 Colo. 294, 303, 20 P. 752, 756 (1889); *Garhart,* 95 P.3d at 581 ("[U]nless the conflict between the constitution and the law is clear and unmistakable, we will not disturb the statute.").

■ The party challenging the validity of a statute is required to prove it is unconstitutional beyond a reasonable doubt; a statute is facially unconstitutional only if no conceivable set of circumstances exists under which it may be applied in a permissible manner. *People v. M.B.,* 90 P.3d 880, 881 (Colo.2004). In giving effect to a constitutional provision, we employ the same set of construction rules applicable to statutes; in giving effect to the intent of the constitution, we start with the words, give them their plain and commonsense meaning, and read applicable provisions as a whole, harmonizing them if possible. *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263, 1273 (Colo. 2001).

### B.

### This Constitutional Challenge

Section 1–2–103(4), C.R.S. (2005), provides that:

*No person while serving a sentence of detention or confinement in a correctional facility, jail or other location for a felony conviction or while serving a sentence of parole shall be eligible to register to vote or to vote in any election ....*

(Emphasis added.)

Article VII, section 10 of the Colorado Constitution states:

*No person while confined in any public prison shall be entitled to vote; but every such person who was a qualified elector prior to such imprisonment, and who is released therefrom by virtue of a pardon, or by virtue of having served out his full term of imprisonment, shall without further action, be invested with all the rights of citizenship, except as otherwise provided in this constitution.*

(Emphasis added.)

■ On both sides, the arguments in this case are based on the words of the constitutional provision. Danielson contends that the words require restoration of the franchise when the person convicted of the crime is no longer in confinement within prison walls. Secretary of State Dennis responds that the words must be read as a whole; that the phrase "having served out his full term of imprisonment" includes that part of a person's punishment involving the constraints of parole outside of prison walls. We agree with Secretary Dennis.

■ Danielson argues for a strict version of the constitutional word "imprisonment" to mean only confinement within a prison. But the power under the constitution to criminalize conduct and set the punishment for a crime resides within the legislative branch; absent a constitutional infirmity, we have no basis to interfere with the exercise of that power. *People v. M.B.,* 90 P.3d at 882.

Of course we agree with Danielson that parole did not exist at the time Colorado adopted its constitution, but this does not mean that the General Assembly was constrained from punishing crimes with sentences that include custody while the convicted person is being transitioned to community and before restoration of his or her full rights.

At the time our constitution was adopted, the then-current penal practice was for set terms of confinement within prison; the executive had pardoning authority for early

release.[3] 4 Department of Justice, *The Attorney General's Survey of Release Procedures* 14 (Wayne L. Morse et al. eds., 1939).

The advent of indeterminate sentencing in the late 1800s changed this; a maximum sentence was imposed with the possibility of earlier release. *See id.* at 20–21. A shift in penal philosophy accompanied indeterminate sentencing. Criminal sentencing included rehabilitating offenders for re-introduction into society. Charles L. Newman, *Sourcebook on Probation, Parole and Pardons* 17 (3d ed.1968).

Sentencing to parole commenced in New York in 1876 with release, under supervision, from reformatories. *See The Attorney General's Survey of Release Procedures, supra,* at 19–20; Newman, *supra,* at 33–34. Prisoners remained under supervision for six months after release. *The Attorney General's Survey of Release Procedures, supra,* at 19–20. The reformatory attached conditions to release and could revoke parole if the convict violated terms of the parole. *Id.* at 20. By 1910, thirty-two states had adopted parole statutes; by 1922, forty-four states. *Id.*

Colorado first adopted parole sentencing in 1899. *See* Act approved May 3, 1899, ch. 104, 1899 Colo. Sess. Laws 233. Under this provision, the Governor had authority to parole convicts serving other than a life sentence. *Id.* sec. 3. But the General Assembly clearly stated that paroled convicts remained in the legal custody of the penitentiary in which they were imprisoned.

> Every such convict, while on parole, shall remain in the legal custody and under the control of the commissioners of the penitentiary and shall at all times be subject to such rules and regulations as they may prescribe, and shall be subject at any time to be taken back within the enclosure of the penitentiary from which he was permitted to go at large for any reason which may be satisfactory to the commissioners and at their sole discretion.

*Id.* sec. 4.

The General Assembly further provided that

> [t]his Act shall not be construed in any sense to operate as a discharge of any convict paroled under its provisions but simply a permit to any such convict to go without the enclosure of the penitentiary. . . .

*Id.* sec. 6.

■ The legislature's mandate that prisoners remain in legal custody during parole, and that parole is not a discharge from imprisonment, reflects the long-prevailing view of parole. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 477, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[P]arole is an established variation on imprisonment. . . ."); *People v. Lucero,* 772 P.2d 58, 60 (Colo.1989) ("A parolee is one who has been conditionally released from actual custody but is, in the contemplation of the law, still in legal custody and constructively a prisoner of the state. . . . A parolee is considered to be under a restraint imposed by law; he is not a free man.") (internal citations and quotations omitted); 1 Neil P. Cohen, *Law of Probation and Parole* § 1:13 (2d ed. 1999) ("Parole is a continuation of custody rather than a termination of imprisonment. . . .").

At the time Colorado enacted its constitution, a prisoner only finished the "full term of imprisonment" when he or she secured an unconditional release from prison: either the person had completed the entire duration of the sentence or had received a pardon from the Governor. Conditional release on parole—an extension of one's confinement intended to aid the reintegration of criminals

---

**3.** Today's jails that hold prisoners for long periods differ from jails under the early English common law. "Imprisonment originated as a means of holding a public offender for a short time until he was killed, banished, or released. The period of incarceration was very short. . . ." William Parker, *Parole (Origins, Development, Current Practices and Statutes)* 13 (rev. ed. May 1975). "Before the time of Elizabeth[,] imprisonment . . . was not a legal punishment, and the gaols were used to house only untried prisoners, debtors, and felons under the sentence of death." Helen Leland Witmer, *The History, Theory and Results of Parole,* 18 Am. Inst.Crim. L. & Criminology 24, 24 (1927–1928). Due to increasing crime and the need for penalties other than the gallows, pillory, the stocks, flogging, branding, and fining, or execution, prison eventually became a longer term means for removing criminals from society. *Id.* at 24–26.

into society—was never intended to be the sort of unconditional release that the Colorado Constitution envisions will be accompanied by the full restoration of a person's rights.

A parolee is given certain privileges to assist in returning to community while testing his or her capability to adhere to restrictions imposed. The convicted person can be reincarcerated for a parole violation and does not enjoy the full panoply of legal rights a person not serving a sentence enjoys. *See People v. Norton,* 63 P.3d 339, 347 (Colo. 2003) (stating that "a felony offender's penalty or sentence consists of both an incarceration component and a mandatory parole component."). As we said in that case, "parole is nevertheless a clear infringement on an offender's liberty." *Id.* at 344. The U.S. Supreme Court has observed that "parole is more akin to imprisonment than probation is to imprisonment," in holding that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee. *Samson v. California,* —— U.S. ——, 126 S.Ct. 2193, 2194, 165 L.Ed.2d 250 (2006).

In our first case to construe article VII, section 10, we held in a disbarment context that an attorney convicted of a crime was not invested with all the rights of citizenship under this provision when he was placed on parole. Because he was on parole, he was still serving out his "full term of imprisonment." *People ex rel. Colo. Bar Ass'n v. Monroe,* 26 Colo. 232, 233, 57 P. 696, 696 (1899). In that decision, by referring to *People v. Weeber,* 26 Colo. 229, 231, 57 P. 1079, 1080 (1899), we also suggested that bar licensure was not a right of citizenship. *Id.*

Despite Danielson's argument to the contrary, our probation decision recognizing rights of persons in such circumstances is distinguishable. *See Sterling v. Archambault,* 138 Colo. 222, 332 P.2d 994 (1958). Probation is an alternative to a prison sentence. *See Roberts v. United States,* 320 U.S. 264, 272, 64 S.Ct. 113, 88 L.Ed. 41 (1943) (stating that the basic purpose of probation is "to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself

without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity"). If the person violates probation, he or she is subject to being sentenced as though the probation had not been granted.

Although a court may require that a convicted person spend some time in a city or county jail as a condition of probation, under section 18–1.3–202(1), C.R.S. (2005), probation is not granted if the trial court determines "that imprisonment is the more appropriate sentence for the protection of the public," § 18–1.3–203(1), C.R.S. (2005). Unlike incarceration and parole, probation is also not available to those convicted of serious crimes or certain multiple convictions. For example, those convicted of a class one felony or a class two petty offense may not apply for probation. § 18–1.3–201(1)(a), C.R.S. (2005). Those convicted of two or more felonies may not apply for probation on their third or any subsequent conviction, § 18–1.3–201(2)(a), and those convicted of a felony in the past ten years may not apply for probation when convicted of a class 1, 2, or 3 felony, § 18–1.3–201(2)(b).

Also distinguishable is our decision in *Moore v. MacFarlane,* 642 P.2d 496 (Colo. 1982). There we were asked to determine whether article VII, section 10 applied to pre-trial detainees who had not been convicted of a crime or otherwise found to be in violation of the terms of a probation sentence they were serving as the result of a prior conviction.

Nor do we agree with Danielson's argument that *Martin v. People,* 27 P.3d 846 (Colo.2001), compels the conclusion that a person serving mandatory parole has completed his or her full term of imprisonment within the meaning of article VII, section 10. The language from *Martin* Danielson relies on states:

> Once an offender is granted release to parole supervision by the state board of parole, he will be deemed to have discharged his sentence to imprisonment in the same manner as if he had been discharged pursuant to law.

*Id.* at 858. Narrowly relying on this part of our discussion in *Martin*, Danielson contends that we construed the General Assembly's action in adopting mandatory parole as changing the nature of parole in regard to a convicted person's voting rights. The suggestion is that the General Assembly no longer intended parole to be part of the convicted person's full term of imprisonment within the meaning of article VII, section 10. We disagree.

As we have explained earlier in the present opinion, not long after Colorado became a state, the General Assembly created parole as a form of legal custody outside of prison walls to assist and test a person's transition back into the community. There is no indication in its enactment of mandatory parole that the legislature intended mandatory parole to change the nature of parole as it relates to deprivation of voting rights.

In *Martin*, we were addressing how discretionary parole and mandatory parole differ in their operation. We analyzed whether the General Assembly intended to change parole from discretionary to mandatory for sex offenders whose offenses occurred prior to July 1, 1996. *Martin*, 27 P.3d at 860. In holding it did not, we differentiated discretionary parole sentencing schemes from mandatory parole sentencing schemes. Our focus on the words "maximum sentence" dealt with the fact that an offender who is governed by discretionary parole will never serve any penalty greater than the sentence to which he is initially punished, whereas mandatory parole adds to a convicted person's punishment that commences in prison. *Id.* at 858.

Thus, we explained in *Martin* that, "under mandatory parole, a convicted offender does not begin serving the period of parole until his prison sentence has been fully served, or the parole board determines that he is ready for parole," and "an offender sentenced under the mandatory parole scheme faces a sentence to prison, a period of parole, and possibly even another period of confinement if he violates the conditions of his parole." *Id.*

Accordingly, in-prison confinement and the type of conditional release from confinement outside of prison walls that mandatory parole entails are separate components of the penalty the General Assembly has prescribed for certain crimes. *Id.* at 850; *see* Ch. 322, sec. 7, § 18–1–105, 1993 Colo. Sess. Laws 1981, 1981–83; § 18-1.3–401(1)(a)(V), C.R.S. (2005). Revocation of mandatory parole is an administrative procedure, is not accompanied by the full rights attendant to a criminal prosecution, and results in prison confinement. Moreover, a court is not at liberty to waive the applicability of mandatory parole. *Craig v. People*, 986 P.2d 951, 959 (Colo. 1999); 15 Robert J. Dieter, *Colorado Practice Series, Criminal Practice and Procedure* § 20.26 (2d ed.2004).

In sum, the meaning of the constitutional phrase "full term of imprisonment" was not before us in *Martin*. We considered the statutory term "maximum sentence" as it then applied to a particular discretionary parole scheme. We did not suggest that mandatory parole is an unconditional form of release from confinement unlike any other kind of parole. In all of its forms, parole entails a loss of a convicted person's liberties, including as provided in the statute we uphold today a felon's voting rights, section 1–2–103(4), C.R.S. (2005). The intent of the constitutional phrase "full term of imprisonment" in article VII, section 10 is to restore an incarcerated person's full rights upon completion of the entire duration of his or her sentence, or upon a pardon from the Governor. Whether mandatory or discretionary, parole is part of the incarcerated person's sentence when the General Assembly so provides. A felon who is still serving parole is not entitled to restoration of his or her voting rights under section 1–2–103(4) and article VII, section 10.

We agree with Secretary Dennis that the people of Colorado in adopting their constitution intended that those who commit crimes so severe that they warrant time in prison are subject to disenfranchisement and are reinvested with the right to vote only on completion of the entire sentence, or if pardoned.

Therefore, we do not agree with Danielson's contention that the General Assembly contravened article VII, section 10 when it

adopted section 1–2–103(4). The General Assembly has authority to include parole as part of the "full term of imprisonment" within the meaning of this constitutional provision.

### III.

Accordingly, we affirm the trial court's judgment of dismissal.

Justice EID does not participate.