2015 CO 33

**Joyce RENO, in her official capacity as Chaffee County Clerk and Recorder, Petitioner**

v.

**Marilyn MARKS, Respondent**

**Supreme Court Case No. 14SC235**

Supreme Court of Colorado.

May 26, 2015

Rehearing Denied June 15, 2015

Attorneys for Petitioner: Chaffee County Attorney's Office, Jennifer A. Davis, County Attorney, Salida, Colorado

Attorneys for Respondent: Robert McGuire Law Firm, Robert A. McGuire, Lone Tree, Colorado

Attorneys for Amici Curiae Colorado Counties, Inc., Colorado County Clerks Association, Special District Association of Colorado, Colorado Association of School Boards, and The Colorado Municipal League: Hall & Evans, L.L.C., Thomas J. Lyons, Stephanie A. Montague, Denver, Colorado

Attorneys for Amici Curiae The Colorado Press Association and The Colorado Freedom of Information Coalition: Levine Sullivan Koch & Schulz, LLP, Steven D. Zansberg, Thomas B. Kelley, Denver, Colorado

Attorneys for Amicus Curiae Colorado Ethics Watch: Colorado Ethics Watch, Luis Toro, Margaret Perl, Denver, Colorado

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶1 This case requires us to determine whether a person who requests records under the Colorado Open Records Act (CORA), §§ 24–72–200.1 to –206, C.R.S. (2014), may recover costs and reasonable attorney fees where the official custodian brings a court action under section 24–72–204(6)(a), C.R.S. (2014), seeking an order restricting or prohibiting disclosure of the records requested.[1]

¶2 Shortly before the 2011 election, the Chaffee County Clerk and Recorder received a CORA request from Marilyn Marks for access to voted paper ballots from the 2010 general election. Because the Clerk believed that Colorado law prohibited disclosing voted ballots, and because Marks requested the ballots within twenty days of an upcoming election, the Clerk filed an action in district court under section 24–72–204(6)(a) seeking an order prohibiting or restricting disclosure of the ballots. Before the district court ruled

on the merits of the Clerk's request, however, the General Assembly enacted section 24–72–205.5, C.R.S. (2014), providing that voted ballots are subject to CORA and describing the process by which records custodians must make them available. The Clerk then produced a single voted ballot for Marks to inspect, and the parties agreed that the only remaining issue in the case was whether Marks was entitled to costs and attorney fees.

¶3 The district court acknowledged that a prevailing applicant who brings suit to compel disclosure under section 24–72–204(5) is entitled to costs and reasonable attorney fees. The court nevertheless held that section 24–72–204(5) did not apply to this case because Marks did not obtain a favorable court order or judgment on any claim or counterclaim brought under that provision; rather, the Clerk initiated the action under section 24–72–204(6)(a). The court further held that section 24–72–204(6)(a) did not authorize an award of costs and fees to a requestor where, as here, the custodian filed in district court seeking an order prohibiting disclosure of records.

¶4 The court of appeals reversed, holding that CORA's fee-shifting provision mandates an award of attorney fees to a prevailing records requestor, regardless of which party initiates litigation. *Reno v. Marks*, 2014 COA 7, ¶¶1, 15–16, —— P.3d ——. The court of appeals concluded that Marks was a prevailing applicant and that the district court erred in denying her request for attorney fees. *Id.* at ¶14.

¶5 We hold that where an official custodian seeks an order prohibiting or restricting disclosure under section 24–72–204(6)(a), a prevailing records requestor is entitled to costs and attorney fees in accordance with section 24–72–204(5). Under section 24–72–204(5), a prevailing records requestor is entitled to costs and attorney fees unless the district court finds that the denial of the right of inspection was proper. Here, the district court's order reflects that the Clerk's

---

1. We granted review of the following issue: Whether the court of appeals erred by mandating an award of attorney fees to a CORA records requestor in a proceeding under section 24–72–204(6)(a), C.R.S. (2013), even though that section does not expressly provide for an award of fees.

denial of Marks' request was proper. Consequently, Marks is not entitled to attorney fees in this case. We therefore reverse the judgment of the court of appeals.

## I. Facts and Procedural History

¶ 6 On October 7, 2011, Marilyn Marks sent Joyce Reno, the Chaffee County Clerk and Recorder, an email request to review "some voted ballots from the 2010 general election." Marks explained that she wanted to demonstrate to the public and the press that voted ballots are public records subject to inspection under CORA. The county attorney replied to Marks' email, explaining that the Clerk's Office was unable to respond to the request until after the impending election. The attorney also stated that the Clerk considered the request voluminous and unduly broad because it did not identify the ballots Marks wished to review.

¶ 7 On October 11, Marks sent another email with a narrower request, asking to inspect and copy "the first anonymous/untraceable" mail-in ballot in the first box of mail ballots from the 2010 election. In this email, Marks gave the Clerk notice, as required by CORA, of her intent to apply to the district court for an order permitting disclosure if the Clerk denied her request. See § 24–72–204(5), C.R.S. (2014) (requiring an applicant who has been denied inspection of public records to give the custodian at least three business days' notice of the applicant's intent to file an application in district court). Two days later, the county attorney responded that the Clerk could not determine if disclosure was prohibited and believed that disclosing voted ballots would do substantial injury to the public interest. The county attorney also informed Marks that the Clerk was petitioning the district court under section 24–72–204(6)(a), C.R.S. (2014), to determine whether voted ballots were subject to CORA.

¶ 8 In her petition filed with the district court, the Clerk did not assert that she was unable to determine whether disclosure of the requested ballot was prohibited. Rather, she stated that she believed, in good faith, that Colorado law prohibited her from disclosing voted ballots. Accordingly, she asked the district court for an "order that disclosure of a voted ballot is prohibited." The Clerk explained that many ballots from the 2010 general election had handwritten signatures or other identifying marks, and that some precinct and ballot style combinations were unique to one or two voters. She noted that no statutes, cases, rules, or protocols defined whether a particular ballot was "anonymous" or "untraceable," as Marks requested. The Clerk further observed that under Colo. Const. art. VII, sec. 8, an election official cannot "disclose how any elector shall have voted" and that section 1–13–712(3)–(4), C.R.S. (2014), makes it a criminal offense for an election official to "reveal to any other person the name of any candidate for whom a voter has voted." Although the Clerk was aware of the court of appeals' recently issued decision in *Marks v. Koch*, 284 P.3d 118, 124 (Colo.App.2011),[2] holding that digital images of anonymous ballots are eligible for inspection under CORA, she noted that the ruling did not address criminal liability under the Election Code, § 1–13–712(3)–(4), and involved distinguishable facts.[3]

¶ 9 The day after the Clerk filed her petition with the district court, the Secretary of State's Office issued an Election Alert, offering guidance to county clerks regarding CORA requests to inspect voted ballots. The Election Alert explained that the Secretary of State read *Koch* to require county clerks to make voted ballots available for inspection in accordance with CORA unless a ballot contains marks that could identify the voter who cast the ballot. The Election Alert also noted that if extenuating circumstances made it impractical or impossible for a county to comply with a request in light of the impending election, custodians could seek declaratory relief in district court.

---

2. The court of appeals issued its ruling in *Marks v. Koch* on September 29, 2011, approximately two weeks before the Clerk filed her petition with the district court.

3. The digital photographic images of paper ballots requested in *Koch* were stored as tagged image file format (TIFF) files.

¶ 10 The Clerk did not withdraw her petition following the Election Alert. However, before the court issued a ruling on the petition, the parties stipulated to hold the case in abeyance in light of proposed legislation addressing the disclosure of voted ballots under CORA. In June 2012, the governor signed into law House Bill 12–1036, which added section 24–72–205.5, C.R.S., providing that voted ballots are subject to inspection under CORA and requiring custodians to protect voter privacy by ensuring that the ballots cannot be traced to the individuals who cast them. § 24–72–205.5(1)(a), (4)(a)–(b), C.R.S. (2014).

¶ 11 Following passage of the bill, the Clerk produced one voted ballot for Marks' inspection. The parties then agreed that the only remaining issue in the lawsuit was whether Marks was entitled to costs and attorney fees. Notably, the parties did not stipulate to entry of judgment for Marks and against the Clerk, nor did the district court enter any order to that effect.

¶ 12 In September 2012, the district court held a hearing to determine whether Marks could recover attorney fees under section 24–72–204(5) ("subsection (5)") and –204(6)(a) ("subsection (6)(a)"). Subsection (5) allows a person who has been denied the right to inspect a public record to apply for a court order permitting such inspection. § 24–72–204(5). Subsection (5) also requires the court to award costs and reasonable attorney fees to a prevailing applicant unless the court finds that the custodian properly denied inspection:

> Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant in an amount to be determined by the court.

*Id.*

¶ 13 The Clerk, however, filed her petition under subsection (6)(a), which allows a *custodian* to apply to the district court either for an order permitting her to restrict disclosure of a record or for a determination whether disclosure is prohibited. § 24–72–204(6)(a). Subsection (6)(a) provides a "safe harbor" from subsection (5)'s attorney fees provision to a custodian who was unable, in good faith, to determine whether disclosure of a particular record was prohibited without a court ruling:

> The attorney fees provision of subsection (5) of this section shall not apply in cases brought pursuant to this paragraph (a) by an official custodian who is unable to determine if disclosure of a public record is prohibited under this part 2 if the official custodian proves and the court finds that the custodian, in good faith, after exercising reasonable diligence, and after making reasonable inquiry, was unable to determine if disclosure of the public record was prohibited without a ruling by the court.

*Id.*

¶ 14 The district court construed these provisions and held that Marks was not entitled to attorney fees under the circumstances of this case. The court observed that subsection (6)(a) allows a custodian to petition for a court order in two scenarios. First, where a custodian believes that disclosure of a record would do substantial injury to the public interest (notwithstanding the fact that the record might otherwise be available for public inspection), the custodian may apply for an order permitting her to restrict disclosure. Alternatively, where a custodian is unable, in good faith, after reasonable diligence and inquiry, to determine whether disclosure is prohibited, the custodian may ask the court to make this determination.

¶ 15 The district court then examined the "safe harbor" language in subsection (6)(a) and concluded that it applies only to a custodian who is unable to determine whether disclosure is permitted and who petitions the court to make this determination. Because the Clerk specifically requested an order prohibiting or restricting disclosure of the voted ballots, the safe harbor language did not apply. Nevertheless, the district court concluded that it did not have authority to grant Marks' request for attorney fees because subsection (6)(a) does not expressly authorize the award of fees where, as here, a custodian seeks an order prohibiting or restricting disclosure. Thus, it held that the "American

Rule" applied and that the parties must bear their own attorney fees. *See Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996) ("[T]he American rule ... requires each party in a lawsuit to bear its own legal expenses.").

¶ 16 The district court also addressed Marks' contention that she was entitled to costs and attorney fees under *Colorado Republican Party v. Benefield (Benefield I)*, 337 P.3d 1199, 1207 (Colo.App.2011), because she was the "prevailing applicant" under subsection (5). In *Benefield I*, the court of appeals held that district courts lack discretion to award attorney fees under subsection (5)'s fee-shifting provision:

> CORA's costs and attorney fees provision does not afford the trial court discretion. The award of costs and attorney fees is mandatory "[u]nless the court finds that the denial of the right of inspection was proper".... The court cannot find the denial of the right of inspection was proper where the custodian withheld a record that was required to be disclosed.

*Id.* (quoting § 24–72–204(5)). The district court distinguished *Benefield I*, noting that, unlike the requesting party in that case, Marks did not pursue any claim or counterclaim under subsection (5), nor did she obtain a court ruling on the merits in her favor; instead, she received the record she sought without a court order. Thus, the court reasoned, Marks was not a prevailing applicant or a prevailing party.

¶ 17 Finally, the district court made findings regarding the "necessity" of the Clerk's petition as additional grounds for its conclusion that attorney fees were not merited. The court found that the Clerk's petition was "apparently reasonable and necessary" because she could not comply with Marks' request without violating Colorado laws protecting the secrecy of the ballot. Specifically, given the Clerk's unrebutted testimony that many ballots contain markings and that some precinct and ballot style combinations are unique to one or two voters, the Clerk's compliance with Marks' request would have "risked public disclosure of how a particular elector had voted," in violation of Colo.

Const. art. VII, sec. 8. The court noted that the proper procedure for inspecting voted ballots was not resolved until the General Assembly passed H.B. 12–1036, and even that law does not permit a member of the public to personally examine a box of voted ballots and determine for herself if the ballots are anonymous or untraceable to a particular voter—which was the procedure that Marks proposed in her first request. The court found that the Clerk's position regarding the secrecy of the ballot was consistent with *Marks v. Koch*, in which the court of appeals concluded that "secrecy in voting" under Colo. Const. art. VII, sec. 8 is meant to "protect[ ] from public disclosure the identity of an individual voter and any content of the voter's ballot that could identify the voter," 284 P.3d at 122. The district court thus found that "[i]t was not unreasonable for the Clerk to deny Ms. Marks' request" and that the Clerk reasonably delayed Marks' demands for access until the election was over and the legislature had spoken.

¶ 18 The court of appeals reversed, holding that where the custodian commences an action under subsection (6)(a) seeking an order restricting inspection, the district court lacks discretion to deny an award of attorney fees to a requestor who ultimately obtains a requested record. *Reno v. Marks*, 2014 COA 7, ¶ 1, —— P.3d ——. The court of appeals agreed with the district court that CORA provides two avenues for a custodian to obtain judicial resolution of a dispute over inspection of a public record: an action by the applicant to compel inspection under subsection (5); and an action by the custodian to obtain judicial guidance or to restrict inspection under subsection (6)(a). *Id.* at ¶ 10. However, the court of appeals parted ways with the district court over how subsection (5)'s fee-shifting provision applies to subsection (6)(a). *Id.* at ¶¶ 15–16. Specifically, the court of appeals acknowledged that, although subsection (6)(a) does not expressly provide for an attorney fee award to an applicant, it creates a safe harbor from subsection (5)'s fee-shifting provision for a custodian who was unable, in good faith, to determine whether disclosure of a requested record was prohib-

ited. *Id.* at ¶ 12.[4] The court of appeals concluded that the safe harbor's reference to "[t]he attorney fees provision of subsection (5)" compels the conclusion that the fee-shifting provision also applies to the only other form of custodian-initiated action under subsection (6)(a)—namely where, as here, the custodian seeks an order restricting disclosure. *Id.* at ¶ 15. Applying the "unless" clause from subsection (5), the court of appeals reasoned that a court must award costs and attorney fees to the requestor under subsection (6)(a) unless the *custodian* obtains an order *restricting* inspection. *Id.* at ¶ 16. Because the Clerk failed to obtain a court order shielding the records from inspection, Marks was the "prevailing applicant" entitled to an award of fees. *Id.* at ¶¶ 14, 16, 24.

¶ 19 We granted the Clerk's petition for writ of certiorari to review the court of appeals' decision.

## II. Standard of Review

¶ 20 We review questions of statutory interpretation, including the meaning of CORA's provisions, de novo. *Denver Publ'g Co. v. Bd. of Cnty. Comm'rs*, 121 P.3d 190, 195 (Colo.2005). Our aim when construing a statute is to effectuate the General Assembly's intent. *City of Westminster v. Dogan Constr. Co.*, 930 P.2d 585, 590 (Colo.1997). To do so, we examine the statutory language in the context of the statute as a whole and strive to give "consistent, harmonious, and sensible effect to all parts." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088–89 (Colo. 2011); *see also Foiles v. Whittman*, 233 P.3d 697, 699 (Colo.2010) ("All related provisions of an act must be construed as a whole; thus, if more than one statute addresses an issue, the statutes should be read together."). We give words and phrases their plain and ordinary meaning, and where statutory language is unambiguous, we do not resort to other rules of statutory interpretation but apply the language as written. *Foiles*, 233 P.3d at 699; *City of Westminster*, 930 P.2d at 590. We avoid interpretations that would lead to an absurd result. *Denver Post Corp.*, 255 P.3d at 1089.

## III. Analysis

¶ 21 This case presents two questions: whether the fee-shifting provision in section 24–72–204(5), C.R.S. (2014), applies to actions brought under section 24–72–204(6)(a), C.R.S. (2014); and, if so, whether Marks is entitled to an award of costs and attorney fees in this case.

¶ 22 We begin with the two subsections and the statutory context in which they appear. The statute's plain language and the public policy underlying CORA lead us to conclude that, where a custodian seeks an order prohibiting or restricting disclosure of a record under subsection (6)(a), a prevailing records requestor is entitled to fees in accordance with subsection (5). Under subsection (5), a prevailing records requestor is entitled to reasonable attorney fees unless the district court finds that the denial of the right of inspection was proper. Here, the district court's order reflects that the Clerk's denial of Marks' request was proper. Consequently, Marks is not entitled to attorney fees in this case.

### A. Section 24–72–204(5) and –204(6)(a).

¶ 23 The Colorado Open Records Act, §§ 24–72–200.1 to –206, C.R.S. (2014), governs inspection of public records. Section 24–72–204 delineates the procedures for the applicant or the custodian to apply to the district court for judicial resolution of a dispute over inspection of a public record.

¶ 24 Although the Clerk initiated the current litigation under subsection (6)(a), our statutory analysis begins with subsection (5), as the two subsections are closely related and each informs our understanding of the other. Subsection (5) provides a person who is denied access to a record with the right to apply to the district court for an order directing the custodian to show cause why the inspection should not be permitted. § 24–72–204(5). Subsection (5) requires the records requestor to give the custodian three days' advance notice before applying to the district court for an order permitting inspec-

---

4. Because the Clerk's petition did not seek judicial guidance on the basis that she was unable to

determine if disclosure was prohibited, the safe harbor did not apply. *Id.* at ¶ 13.

tion. *Id.* This waiting period provides the custodian an opportunity to reconsider her denial and encourages custodians to resolve the matter without forcing the records requestor into court. *Benefield v. Colo. Republican Party (Benefield II )*, 2014 CO 57, ¶ 7, 329 P.3d 262, 264.

¶ 25 Importantly, subsection (5) has a non-reciprocal fee-shifting provision, which mandates an award of attorney fees to a prevailing applicant:

> Unless the court finds that the denial of the right of inspection was proper, it shall order the custodian to permit such inspection and shall award court costs and reasonable attorney fees to the prevailing applicant in an amount to be determined by the court.

§ 24–72–204(5); *see also Benefield II*, ¶ 9, 329 P.3d at 265 ("[U]nless the district court finds proper the custodian's denial of the right of inspection, the court is required to both order the custodian to permit inspection and award court costs and reasonable attorney fees to the prevailing applicant."). In *Benefield II,* we held that a "prevailing applicant" is "any person who applies for and receives an order from the district court requiring a custodian to permit inspection of a public record," even if that order permits inspection of less than all the records the applicant requested. ¶ 21, 329 P.3d at 268.

¶ 26 Subsection (6)(a) describes the rights and obligations of the custodian, as opposed to the records requestor. § 24–72–204(6)(a). As previously discussed, if a custodian believes that disclosure of a requested record would injure the public interest, subsection (6)(a) allows the custodian to petition the district court for an order permitting her to restrict disclosure. *Id.* Alternatively, if the custodian is unable, in good faith, to determine whether disclosure of the record is prohibited, subsection (6)(a) permits her to ask the district court to make that determination:

> If, in the opinion of the official custodian of any public record, disclosure of the contents of said record would do substantial injury to the public interest, notwithstanding the fact that said record might otherwise be available to public inspection *or* if

the official custodian is unable, in good faith, after exercising reasonable diligence, and after reasonable inquiry, to determine if disclosure of the public record is prohibited pursuant to this part 2, the official custodian may apply to the district court of the district in which such record is located for an order permitting him or her to restrict such disclosure *or* for the court to determine if disclosure is prohibited.

*Id.* (emphasis added).

¶ 27 Subsection (6)(a) provides a limited safe harbor from an attorney-fee award if the custodian proves and the court finds that the custodian, in good faith, after exercising reasonable diligence and making reasonable inquiry, was unable to determine if disclosure of the record was prohibited without a ruling by the court:

> The attorney fees provision of subsection (5) of this section shall not apply in cases brought pursuant to this paragraph (a) by an official custodian who is unable to determine if disclosure of a public record is prohibited under this part 2 if the official custodian proves and the court finds that the custodian, in good faith, after exercising reasonable diligence, and after making reasonable inquiry, was unable to determine if disclosure of the public record was prohibited without a ruling by the court.

*Id.*; *see also Benefield II*, ¶ 8, 329 P.3d at 264. In other words, the safe harbor provides that the fee-shifting provision of subsection (5) "shall not apply" to a custodian who uses subsection (6)(a) to seek judicial guidance because she is unable, in good faith, to determine whether disclosure is prohibited. § 24–72–204(6)(a).

¶ 28 The existence of the safe harbor logically implies that the attorney fees provision of subsection (5) otherwise *does* apply to actions under subsection (6)(a). Put differently, by establishing an exception to fee shifting in subsection (6)(a), the safe harbor language compels the conclusion that the attorney fees provision in subsection (5) generally applies to custodian actions under subsection (6)(a), including actions where, as here, the custodian seeks an order restricting disclosure. *See Reno v. Marks,* 2014 COA 7,

¶ 15, —— P.3d ——. Indeed, if the fee-shifting provision of subsection (5) does *not* generally apply to actions under subsection (6)(a), the safe harbor exception is wholly unnecessary.

¶ 29 The Clerk argues that the safe harbor provision applies only to applicant-initiated actions under subsection (5) and that the court may never award attorney fees when a custodian brings an action under subsection (6)(a) because that subsection does not contain explicit fee-shifting language. Under the Clerk's interpretation, the safe harbor shields custodians from fee awards when a records requestor files an action under subsection (5) and the court finds that the custodian was unable, in good faith, to determine if disclosure was prohibited. However, the Clerk's interpretation contravenes the plain language of the safe harbor provision, which specifically applies to "cases brought *pursuant to this paragraph (a) by an official custodian.*" § 24–72–204(6)(a) (emphasis added). We cannot excise this language from the safe harbor provision. Further-more, if the General Assembly intended the safe harbor to apply only to subsection (5) actions, it logically would have placed the safe harbor in subsection (5) instead of in subsection (6)(a).

¶ 30 The Clerk also points out that the "American Rule," which we follow in Colorado, requires each party to a lawsuit to bear its own legal expenses "absent a specific contractual, statutory, or procedural rule providing otherwise." *Buder v. Sartore,* 774 P.2d 1383, 1390 (Colo.1989); *see also City of Wheat Ridge v. Cerveny,* 913 P.2d 1110, 1114 (Colo.1996). She contends that subsection (6)(a) lacks specific and clear language and, therefore, does not authorize an attorney fee award. We disagree. Here, the fee-shifting provision in subsection (5), which describes and mandates an attorney fee award in certain circumstances, provides the requisite language. The safe harbor provision of subsection (6)(a) specifically refers to "the attorney fees provision of subsection (5)." By logical implication, the safe harbor language incorporates the attorney fees provision of subsection (5) into subsection (6)(a), making the fee-shifting provision otherwise applica-

ble outside the safe harbor, provided that the applicant meets the other requirements of subsection (5).

¶ 31 The public policy underlying CORA also supports our interpretation of subsection (5). *See* § 24–72–201, C.R.S. (2014) ("It is declared to be the public policy of this state that all public records shall be open for inspection by any person at reasonable times."). In *Benefield II,* we observed that section 24–72–204 "is clearly structured to provide disincentives to forcing an applicant to vindicate [her] right of inspection by filing with the district court." ¶ 7, 329 P.3d at 264. These disincentives include subsection (5)'s requirement that an applicant give the custodian three days' notice before applying to the district court and the non-reciprocal costs and fees provision favoring the applicant. *Id.* If a records requestor is forced to bring a court action to gain access to a public record, subsection (5) mandates that she receive an award of costs and fees. § 24–72–204(5); *Benefield II,* ¶ 2, 329 P.3d at 263 (explaining that subsection (5) "mandates an award of costs and reasonable attorney fees in favor of any person who applies for and receives an order from the district court requiring a custodian to permit inspection of a public record").

¶ 32 By importing subsection (5)'s fee-shifting provision into subsection (6)(a), the General Assembly ensured that the custodian's incentives remain the same regardless of whether the requestor or the custodian commences the court action. Under subsection (5), the custodian is encouraged not to force the applicant to file a court action because the custodian risks having to pay a prevailing applicant's costs and attorney fees unless the court finds that the denial of inspection was proper. § 24–72–204(5). Under subsection (6)(a), the custodian is similarly deterred from taking the applicant to court to seek an order restricting disclosure unless the custodian is reasonably sure that she will win— again because she risks incurring a fee award unless the court finds that the denial of inspection was proper. § 24–72–204(6)(a). Given these consistent disincentives to litigate these issues, the safe harbor provision of subsection (6)(a) makes sense: A custodian who, in good faith, is unable to determine

whether disclosure of a record is prohibited can seek court guidance without incurring potential liability for the requestor's attorney fees. *Id.*

¶ 33 Finally, to hold that subsection (5)'s fee-shifting provision does not apply to custodian-initiated actions likely would promote litigation instead of encouraging the parties to resolve the matter out of court. Because subsection (5) requires a records requestor to give the custodian written notice at least three business days before filing an application in district court to challenge the custodian's denial of inspection, § 24–72–204(5), a custodian could immunize herself from any potential liability for attorney fees simply by filing an action under subsection (6)(a) first. Thus, such an interpretation could create a "race to the courthouse" that the custodian would always win. This result would render CORA's fee-shifting scheme meaningless.

## B. Application

¶ 34 Having established that a prevailing records requestor is entitled to fees in accordance with subsection (5) where a custodian seeks an order prohibiting or restricting disclosure of a record under subsection (6)(a), we turn now to the facts of the present case. We hold that because the district court's order reflects that the Clerk's denial of Marks' request to review voted ballots was proper, Marks is not entitled to recover attorney fees in this case.

¶ 35 As we explained in *Benefield II*, "there can be little doubt that [subsection (5)] was intended to mandate an award of costs and attorney fees in favor of the prevailing applicant except in situations in which the custodian properly denied access." ¶ 10, 329 P.3d at 265. After all, the subsection specifies that "[u]nless the court finds that the denial of the right of inspection was proper," it must order the custodian to allow inspection and award costs and fees to the prevailing applicant. § 24–72–204(5).

¶ 36 Here, the district court held that subsection (6)(a) did not require or allow the award of fees sought by Marks. Neverthe-

less, the court went on to make extensive findings about the appropriateness of the Clerk's petition to provide "additional reasons" for its denial of Marks' request for fees. Importantly, the court found that the Clerk could not, consistent with Colorado law, comply with Marks' demands. The court found that the Clerk's position was consistent with *Marks v. Koch*, in which the court of appeals concluded that "secrecy in voting" under Colo. Const. art. VII, sec. 8 is meant to "protect[ ] from public disclosure the identity of an individual voter and any content of the voter's ballot that could identify the voter." 284 P.3d at 122. Had the Clerk allowed Marks to personally review a number of paper ballots, as Marks had originally requested, the Clerk's actions would have risked disclosing the identity of various voters, given the Clerk's unrebutted testimony that many ballots contain markings and that some precinct and ballot style combinations are unique to just a handful of voters. The court also observed that the procedure for inspecting voted ballots was not resolved until the General Assembly passed H.B. 12–1036, and even that law does not permit the review procedure that Marks proposed in her request. In short, the district court found that "[i]t was not unreasonable for the Clerk to deny Ms. Marks' request" and that the Clerk reasonably delayed Marks' demands for access until the election was over and the legislature had spoken.

¶ 37 Marks contends that these findings are dicta and that *Marks v. Koch*, coupled with the Secretary of State's Election Alert, gave the Clerk all the guidance she needed to determine that voted ballots are subject to CORA requests. We disagree. First, the court made factual findings about the propriety of the Clerk's petition "as additional reasons why an award of attorney fees is not merited"—in other words, as alternative legal grounds for denying an award of costs and attorney fees. Moreover, because the court of appeals decided *Koch* less than two weeks before Marks' first request, the time for filing a petition for writ of certiorari with this court had not yet passed.[5] And impor-

5. In fact, this court granted certiorari review in *Koch v. Marks*, No. 11SC816, 2012 WL 1305968

(Colo. April 16, 2012), and later dismissed the

tantly, it was unclear whether *Koch*'s holding—that digital copies of anonymous ballots are eligible for inspection under CORA—applied to voted paper ballots at all, given that the court of appeals held that these images were not "ballots" under the Colorado Municipal Election Code, § 31–10–616, C.R.S. (2011). *Koch*, 284 P.3d at 123, 124. Finally, we note that the Secretary of State issued the Election Alert *after* the Clerk filed her petition; the relevant question is whether the Clerk's denial of the right of inspection was proper at the time she filed in district court.

¶ 38 The district court surveyed the unique facts in this case, and its findings reflect that, at the time the Clerk filed her petition, denial of the right of inspection of "some voted ballots" was proper. Therefore, pursuant to subsection (5), Marks is not entitled to costs and attorney fees.

## IV. Conclusion

¶ 39 We hold that where a records custodian seeks an order prohibiting or restricting disclosure of public records under section 24–72–204(6)(a), C.R.S. (2014), a prevailing records requestor is entitled to costs and reasonable attorney fees in accordance with section 24–72–204(5), C.R.S. (2014). Under subsection (5), the district court must award a prevailing records requestor costs and reasonable attorney fees unless the court finds that the denial of the right of inspection was proper. Because the district court's order reflects that the Clerk's denial of the request was proper, Marks is not entitled to costs and attorney fees in this case. We therefore reverse the judgment of the court of appeals.

case as improvidently granted following passage